# DISTRICT COURT

# DISTRICT OF MAINE

| | | |
|---|---|---|
| ROBERT L. COUSINS AND<br>JUDY A. COUSINS, | ) ) ) | |
| PLAINTIFFS | ) ) | |
| v. | ) ) | CIVIL NO. 1:14-CV-515-DBH |
| KEITH HIGGINS, HEATH HIGGINS,<br>TADD JEWETT, MATTHEW<br>TETREAULT AND MATTHEW<br>LINDSLEY, | ) ) ) ) ) | |
| DEFENDANTS | ) ) | |

## DECISION AND ORDER ON DEFENDANTS' MOTION TO DISMISS AND PLAINTIFFS' MOTION TO AMEND COMPLAINT

This federal lawsuit arises out of a December 4, 2013, fire that destroyed the plaintiffs' restaurant and home in Bass Harbor, part of Tremont Maine.  If the plaintiffs' assertions of fact are true, a serious injustice occurred.  But even accepting the untested assertions as true, I conclude that they do not demonstrate a *federal* claim, and I therefore **GRANT** the defendants' motion to dismiss the federal claims with prejudice.  I **GRANT** the motion to dismiss the state law claims without prejudice to their assertion in state court.  I **DENY** the plaintiffs' motion to amend their complaint because the amendment is futile (and I have considered the proposed amended complaint's allegations in granting the motion to dismiss).  In all of this, I take as true the plaintiffs' factual assertions and view them in the light most favorable to the plaintiffs as the non-moving parties on the motion to dismiss.  I also take into account that *pro se* complaints

are to be construed "liberally."  Foley v. Wells Fargo Bank, N.A., 772 F.3d 63, 75 (1st Cir. 2014); see also Guerro v. Mulhearn, 498 F.2d 1249, 1256 (1st Cir. 1974) (the court must "read the allegations of a pro se complaint liberally, and not dismiss the action unless it appears 'beyond doubt that the plaintiff can prove no set of facts . . . which would entitle him to relief.'") (quoting Haines v. Kerner, 404 U.S. 519, 521 (1972).

### ASSERTED FACTS

Robert and Judy Cousins ("the Cousins") operated a restaurant, Cap'n Nemo's, and lived in the upper floors of the building (apparently known as the "lighthouse").   On December 4, 2013, a fire began on the fifth (top) floor. Proposed Amended Compl. ¶ 71 (ECF No. 16-1) (hereafter "Proposed Compl."). The Tremont Volunteer Fire Department ("Tremont FD") responded to the blaze. Id. ¶¶ 72–82.  The Cousins say that when the volunteer firefighters arrived, the fire was small enough that one more fire extinguisher would have put out the fire.  Id. ¶ 75.  But instead, the fire chief told the firefighters that they were not allowed to go inside, and that they would respond to the fire with a "defensive attack."  Id. ¶ 76.  Robert Cousins told Captain Heath Higgins[1] that "I almost have it out, I just need another extinguisher," but Heath Higgins said, "You have to leave, it is mine, now."  Id. ¶ 75.  The Cousins assert that the fire chief did not direct sufficient water to the fire on their premises, but emptied an entire truckload of water on a building 25 feet away from the flames, Compl. ¶ 16 (ECF No. 1), failed to communicate on the appropriate radio channel, and directed fire

---

[1] Two Higgins brothers—Chief Keith Higgins ("Chief Higgins") and Captain Heath Higgins ("Heath Higgins") were members of the Tremont FD.

departments from neighboring towns to "stand down" when they arrived to assist the Tremont firefighters with controlling the fire.  Id. ¶ 18.  The outcome was that the Cousins family lost their home and their restaurant to the fire.[2]  Compl. at 3.

The Cousins complain that these actions were the result of "bad blood" between Tremont firefighters including Chief Higgins, on the one hand, and the Cousins family (or Cap'n Nemo's), on the other hand.  The Cousins describe conflict going back to 2007 over various permits, occupancy limits, karaoke hours, parking, and purported safety violations.  Compl. ¶¶ 6–11.  They say that, before the fire, there were "rumors" that the Tremont Fire Department would let Cap'n Nemo's burn if the restaurant were ever to catch fire.  Compl. ¶ 3.

## PROCEDURAL HISTORY

Robert and Judy Cousins filed their *pro se* complaint in this Court against twenty people, many of whom were firefighters for the Tremont Volunteer Fire Department.  The Cousins asserted both federal and state law claims.  On the Magistrate Judge's *sua sponte* recommended decision under 28 U.S.C. § 1915(e)(2)(B), this Court immediately dismissed the claims against all but five of the named defendants.[3]  Report and Recommended Dec. at 2 (ECF No. 6), adopted December 30, 2014 (ECF No. 8).

---

[2] The Cousins also assert that the Tremont firefighters allowed the fire to spread to their son's 32-foot lobster boat, lobster tank, and nearby storage buildings, Compl. at 3, and that a stamp collection, valued at about $1,000,000, was destroyed as a result of the fire.  Compl. at 12.
[3] The complaint failed to assert any facts as to the involvement of 14 defendants and, as to a fifteenth defendant, asserted only that he placed one firefighter on "extended leave," not a basis for recovery by the Cousins.  Report and Recommended Dec. at 2 (ECF No. 6).

The remaining defendants are all Tremont firefighters:  Heath Higgins, Keith Higgins, Tadd Jewett, Matthew Lindsley, and Matthew Tetreault.  They have moved to dismiss the Cousins' complaint for failure to state a claim and for lack of jurisdiction.  The Cousins have opposed the motion and request permission to file an amended complaint, alleging claims against the remaining defendants, the Town of Tremont, the Tremont Volunteer Fire Department, a Tremont selectman,[4] and eight additional defendants (some of them previously dismissed).[5]

## ANALYSIS

Unlike most state courts, federal courts have only limited jurisdiction. They can entertain only disputes that involve a "federal question" or are between citizens of different states.  Here, the plaintiffs and all the defendants are citizens of Maine.  For this Court to have jurisdiction over this case, the Cousins must have sufficiently pleaded a federal question.  28 U.S.C. § 1331.

### FEDERAL CLAIMS

The Cousins assert federal claims under 42 U.S.C. §§ 1983, 1985, 1986, the Americans with Disabilities Act, and "RICO."  I discuss each in turn.

---

[4] The Cousins allege that Selectman Lester Closson "would wait until [the Cousins] had left a [Town] meeting and then make statements disparaging [the Cousins'] reputation concerning the holding tanks for [their] sewage allegedly not being pumped because he had not seen the pump truck."  Proposed Compl. ¶ 139.  While this may or may not be a cognizable claim under state law, there does not appear to be a federal claim because there is no assertion that this selectman operated to deprive the Cousins of federal rights.

[5] Some defendants appear to be a regional newspaper, *Mount Desert Islander*, its owner and publisher, Alan Baker, and a reporter, Mark Good, for their coverage of disputes between the Cousins and the Town.  Proposed Compl. ¶¶ 37, 131, 159.  There appears to be no federal claim because there is no assertion that these media defendants were operating under color of state law or that they actively conspired with other defendants to deprive the Cousins of federal rights.

**(1)      *Section 1983 Claims***

In order to state a claim under 42 U.S.C. § 1983, the Cousins must allege that a defendant (1) violated a right protected by the Constitution or laws of the United States; and (2) in doing so, acted under color of law.  Gagliardi v. Sullivan, 513 F.3D 301, 306 (1st Cir. 2008); 42 U.S.C. § 1983.  In their opposition to the defendants' motion to dismiss the section 1983 claims and in their proposed amended complaint, the Cousins identify a number of constitutional or statutory rights that they say the defendants violated: First Amendment Freedom of Speech, Fourteenth Amendment Substantive Due Process, and Fourteenth Amendment Equal Protection.

**(a)      *First Amendment Freedom of Speech***

The Cousins allege that the defendants Tetreault and Lindsley, Tremont volunteer firefighters, violated their freedom of speech by stealing a sign that the Cousins erected in front of their burned buildings after the fire.  Proposed Compl. ¶ 120.  The sign proclaimed "FD SPECIAL, BLACKENED HAD[DOCK] WARM BEER."  Id.  According to an exhibit to the proposed amended complaint, Hancock County Deputy Sheriff Shane Campbell investigated the sign's disappearance.  Deputy S. Campbell, Narrative Report, Ex. L. to Proposed Compl. (ECF No. 16-8).[6]  In his narrative report, Deputy Campbell stated that the U.S. Coast Guard (Tetreault was a Coast Guard member) had reported that it was charging defendant Tetreault with "Conduct Unbecoming, Lying and Theft."  Id.

---

[6] According to the deputy sheriff's report, Chief Higgins said that "some of his fire department personnel w[ere] offended by the sign."  Deputy S. Campbell, Narrative Report, Ex. L. to Proposed Compl. at 1 (ECF No. 16-8).

at 2. Deputy Campbell forwarded the case to the District Attorney's Office, which declined to prosecute.[7] C. Bassano, D.A., Screening Sheet, Ex. M. to Proposed Compl. (ECF No. 16-9). The Cousins do not assert, and the facts that they allege do not suggest, that Tetreault and Lindsley were acting under color of law when they allegedly stole the sign from the Cousins' property.[8] In the absence of action under color of law, there can be no First Amendment violation.[9]

### (b)    Fourteenth Amendment Substantive Due Process

The proposed amended complaint invokes the Fourteenth Amendment's protection against takings of property.[10] But although the fire destroyed the Cousins' property, government officials did not. (The Cousins have not alleged

---

[7] The comments on the District Attorney's Office "Screening Sheet" state, "In order for this to be prosecuted as a theft we would need to be able to prove the [suspect] took the property with the intent to permanently deprive the owner of the sign. The only evidence we have comes from the [suspect]'s candid admission that he took the sign. He further states he returned it within a day or two. There is no evidence of his intent to deprive the owner of the property. There is insufficient evidence to mount a prosecution on these facts." C. Bassano, D.A., Screening Sheet, Ex. M. to Proposed Compl. (ECF No. 16-9).

[8] The Cousins also say that Tetreault stole their son's Apple computer. Compl. ¶ 32. They do not assert, and the facts do not support, that Tetreault acted under color of law when he allegedly did so. For this reason, the Cousins' federal law claims associated with the theft fail. They also say:

> We had a bar-b-que grill that was not harmed. The following day we noted that the grill had been tossed onto a smoldering ember pile. Some knobs were missing. The respondents who returned to the firescene, Tetreault, Lindsley, and Heath Higgins, according to an incomplete incident report made out by Capt. Higgins, were there the same night Tetreault admitted to theft of the sign."

Compl. ¶ 31. In the Proposed Complaint this allegation has become simply: "Firefighters tossed our surviving grill onto the ember heap." Proposed Compl. ¶ 110 (ECF No. 16-9). The latter assertion, taken alone, sounds like a challenge to how the firefighters conducted the firefighting and cleanup, and I explain why such an assertion does not state a federal claim under the next section, Substantive Due Process. But to the extent that the earlier assertion means to suggest that three individuals came back in the middle of the night to vandalize the grill, the Complaint does not actually say that, and it does not assert that such action was under color of law. For that reason, any federal claim concerning the grill also fails.

[9] The Cousins also allege that they were denied a benefit (fire protection) in order to penalize or inhibit their speech. I address this claim under my discussion of Equal Protection.

[10] I treat it as a substantive due process claim, because the Cousins are not asserting procedural inadequacies.

6

that the Tremont Fire Department or any of its firefighters were involved in setting the fire.[11])   The Constitution does not require a municipality to provide the general public with protection from fire, <u>Jackson v. Byrne</u>, 738 F.2d 1443, 1446 (7th Cir. 1984), even where a municipality chooses to provide this service and thus lessens the incentives for private citizens to undertake efforts to protect themselves.   <u>Id</u>. at 1447.   The firefighters' failure to extinguish the Cap'n Nemo's fire is not a substantive due process violation.

### (c)   *Fourteenth Amendment Equal Protection*

Under their proposed amended complaint, the Cousins seek to assert a violation of the Equal Protection Clause of the Fourteenth Amendment.   Proposed Compl. ¶¶ 145–48.   The First Circuit has repeatedly held that, in order to prove an Equal Protection violation, "plaintiffs must establish that, compared with other similarly situated individuals, they were selectively treated . . . based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person."   <u>Aponte-Ramos v. Álvarez-Rubio</u>, 783 F.3d 905, 908 (1st Cir. 2015) (quoting <u>Rubinovitz v. Rogato</u>, 60 F.3d 906, 910 (1st Cir. 1995)) (internal quotation marks omitted).   The Cousins do not claim disparate treatment on a typically impermissible basis like race or religion.[12]   Instead, they allege that the defendants intended to "inhibit or punish the exercise of free speech," or in the

---

[11] The analysis would be different if they had.   <u>See Jackson v. Byrne</u>, 738 F.2d 1443, 1446 (7th Cir. 1984).

[12] The proposed amended complaint states that Robert Cousins is a "100% disabled" Vietnam veteran.   Proposed Compl. ¶¶ 134, 170.   However, the complaint does not allege any facts to support the claim that it was on this basis that he was denied firefighting protection.   I discuss this issue in greater detail when I evaluate the claim under the Americans with Disabilities Act.

alternative, that the defendants had a "malicious or bad faith intent to injure" the Cousins family, a so-called "class of one" equal protection violation.  See Aponte-Ramos, 783 F.3d at 908.

With respect to the free speech claim, the Cousins say that in their briefing (but in neither the originally-filed Complaint nor in the Proposed Amended Complaint) that they had a Ron Paul political sign in their yard, that Robert Cousins' vehicle featured disabled veteran license plates, and that he regularly "spoke out on matters of public interest."  Pls.' Reply to Defs.' Opp'n to Mot. to Amend Compl. at 6 (ECF No. 22).  Those activities do qualify as speech within the protection of the First Amendment.  However, the Cousins do not allege in their Complaint, the Proposed Complaint, or briefing any facts that serve as a basis for their claim that the defendants intended to inhibit or punish this speech, or that this speech motivated the firefighters' treatment of Cap'n Nemo's during the fire.  See Harrison v. Morton, 490 F. App'x 988, 991 (10th Cir. 2012) (while pleadings filed by pro se litigants are to be construed liberally, plaintiffs "still ha[ve] the duty to allege sufficient facts to serve as the basis for [their] claims.").  The equal protection claim based on allegations that the Tremont Fire Department intended to inhibit or punish a constitutionally protected right does not survive on these allegations.

The claim that the Cousins were "arbitrarily and unfavorably singled out" as a 'class of one,'" Freeman v. Town of Hudson, 714 F.3d 29, 38 (1st Cir. 2013), involves a more complex analysis.  "Such a claim is cognizable when—and only when—a 'plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in

treatment.'" <u>Cordi-Allen v. Conlon</u>, 494 F.3d 245, 250 (1st Cir. 2007) (quoting <u>Vill. of Willowbrook v. Olech</u>, 528 U.S. 562, 564 (2000)).  The requirement that the plaintiffs identify those "similarly situated" who were treated differently is meant to be "a very significant burden." <u>Cordi-Allen</u>, 494 F.3d at 251.  In an effort to identify persons situated similarly, the Cousins state that the defendant Captain Heath Higgins had a competing restaurant three miles from Cap'n Nemo's, that it burned on July 12, 2012, Proposed Am. Compl. ¶ 31, and that when Higgins' restaurant caught fire, there were "three ladder trucks" provided, and firefighters went inside the restaurant to fight the fire.  Pls.' Reply to Defs.' Opp'n to Mot. to Amend Compl. at 5.  They also say that during the Cap'n Nemo's fire, their neighbor Tony Menzietti received 2,500 gallons of water to his roof during the fire even though his building was not burning, while the Cousins "received no effective water whatsoever," <u>id</u>. at 3, and that when Menzietti's car burned shortly after December 3, Tremont firefighters "put it right out." <u>Id</u>. at 5.[13]

Other than the fact that the Higgins fire and the Cap'n Nemo's fire both affected restaurants in the vicinity of Tremont, Maine, the Cousins do not identify how these two buildings or these two fires were actually similar.  (Were the buildings of the same size or lay-out?  Were the fires located in the same relative space within the buildings?  Were the fires similar in size, speed, and intensity?)[14]  <u>See</u> <u>Freeman</u>, 714 F.3d at 38 (class of one claims require "an

---

[13] The Proposed Complaint does not mention the car fire.

[14] "The test is whether a prudent person, looking objectively at the incidents, would think them roughly equivalent and the protagonists similarly situated. . . .  Exact correlation is neither likely nor necessary, but the cases must be fair congeners.  In other words, apples should be compared to apples." <u>Tapalian v. Tusino</u>, 377 F.3d 1, 6 (1st Cir. 2004) (citation omitted).

extremely high degree of similarity between [the plaintiffs] and the persons to whom they compare themselves.") (citation omitted).   Likewise, a vehicle fire (Menzietti) cannot be compared to a building fire, and neighboring buildings that are not aflame but may deserve protection (also Menzietti) are not similarly situated.

The Cousins do identify instances of "personal malice and 'bad faith' retaliation." Tapalian v. Tusino, 377 F.3d 1, 7 (1st Cir. 2004).  The complaint and the proposed amended complaint are replete with examples of disagreements between the Cousins and members of the Tremont Fire Department.  The allegation that the fire chief and other firefighters discussed letting Cap'n Nemo's burn if it were ever to catch fire is very troubling.  The First Circuit has noted that "the degree of similarity required" may be "relaxed somewhat" if the plaintiffs plead evidence of "personal malice and 'bad faith' retaliation." Cordi-Allen, 494 F.3d at 251 n.4.[15]  But evidence of bad faith does not altogether eliminate the requirement that the plaintiffs allege that they were treated differently from others similarly situated.  Snyder v. Gaudet, 756 F.3d 30, 36 (1st Cir. 2014) (even assuming bad faith on the part of the defendants, the plaintiff must still show "others similarly situated" were treated differently).  Here, the Cousins have not adequately alleged that other "similarly situated" persons received better treatment.

Independent of this failure to meet the "very significant burden" of demonstrating that others who allegedly received better treatment were in fact

---

[15] Cf. Rocket Learning, Inc. v. Rivera-Sanchez, 715 F.3d 1, 10 (1st Cir. 2013) (including "bad faith intent to injure" as an element of the class-of-one equal protection claim).

"similarly situated," I also conclude that under recent Supreme Court and First Circuit precedents, the "class of one" category is not available for a claim like the Cousins'.

In Engquist v. Oregon Department of Agriculture, 553 U.S. 591 (2008), the Supreme Court distinguished state regulation cases (where the class-of-one argument has been recognized) from cases of governmental action that involve "discretionary decisionmaking based on a vast array of subjective, individualized assessments." Id. at 603. Engquist was a public employment case, and the Court emphasized the "broad discretion that typically characterizes the employer-employee relationship." Id. at 605. As a result, it concluded, "the class-of-one theory of equal protection has no application in the public employment context." Id. at 607. The First Circuit has applied Engquist to other state programs that involve substantial discretion, ruling that "its reasoning extends beyond its particular facts, and we agree with those federal courts that have found the case applicable beyond government staffing." Caesars Mass. Mgt. Co. v. Crosby, 778 F.3d 327, 336 (1st Cir. 2015). Caesars involved a casino license applicant. The First Circuit held that "no class-of-one cause of action can be recognized against state actors given the remarkable breadth of discretion provided by the Massachusetts casino licensing statute." Id. at 336.[16]

Municipal fire-fighting involves, in Engquist's terms, "discretionary decisionmaking based on a vast array of subjective, individualized assessments,"

---

[16] The court had earlier warned of the Engquist narrowing effect: "certain government actions are ill-suited to judicial oversight under the class-of-one formula." Middleborough Veterans' Outreach Center, Inc. v. Provencher, 502 Fed. Appx. 8, 11 (1st Cir. 2013) (citing Engquist, 553 U.S. at 602).

553 U.S. at 603, and in <u>Caesars</u>' terms, a "remarkable breadth of discretion." 778 F.3d at 336.  Firefighters attacking a blaze must make sometimes split-second decisions concerning a wide variety of circumstances, including the nature of the building and its contents, its accessibility, available firefighting resources (water; length of reach of ladder-trucks; personnel), how far the fire has progressed, and danger to life and property—in the burning building, surrounding structures, and to the firefighters themselves.  Varying treatment is inevitable, such that "allowing a challenge based on the arbitrary singling out of a particular person would undermine the very discretion that such state officials are entrusted to exercise." <u>Engquist</u>, 553 U.S. at 603.

I conclude therefore that after <u>Engquist</u> and <u>Caesars</u>, the equal protection class-of-one claim is not available to the Cousins for their challenge to the firefighting decisions that were made on December 4, 2013.

**(2)    Section 1985 Conspiracy Claim**

The Cousins assert a cause of action under 42 U.S.C. § 1985(3).  That statute creates a private right of action "for injuries occasioned when 'two or more persons . . . conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws . . . .'" <u>Burns v. State Police Ass'n of Mass.</u>, 230 F.3d 8, 12 n.3 (1st Cir. 2000) (quoting 42 U.S.C. § 1985(3)). But the Supreme Court has limited the reach of section 1985(3) to conspiratorial conduct propelled by "some racial, or perhaps otherwise class-based invidiously discriminatory animus." <u>Pérez-Sánchez v. Public Building Auth.</u>, 531 F.3d 104, 108 (1st Cir. 2008) (quoting <u>Griffin v. Breckenridge</u>, 403 U.S. 88, 102 (1971)).  A

12

failure to allege racial, or otherwise class-based, invidiously discriminatory animus underlying the defendants' conduct dooms a section 1985 claim. Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir. 1996); see also Knowlton v. Shaw, 704 F.3d 1, 12 (1st Cir. 2013).

The Cousins' proposed amended complaint contains many descriptions of animus directed towards the Cousins and Cap'n Nemo's. Most notably, the Cousins plead facts to suggest that any action taken against the Cousins may have been motivated by "economic or commercial animus." However, the Supreme Court has expressly held that section 1985(3) does not "reach conspiracies motivated by economic or commercial animus." United Bhd. of Carpenters & Joiners of Am., Local 610, AFL-CIO v. Scott, 463 U.S. 825, 838 (1983); see also Pérez-Sánchez, 531 F.3d at 109 (section 1985(3) "provides no remedy for animus on the basis of political beliefs.").

The proposed amended complaint alludes to Robert Cousin's status as a veteran and as a person with a disability. See Proposed Compl. ¶¶ 134, 170, 172, 178. But the Cousins fail to allege any facts that the defendants conspired against them *because* Mr. Cousin is a veteran or has a disability. See Diva's Inc. v. City of Bangor, 411 F.3d 30, 39 (1st Cir. 2005) (affirming dismissal of complaint because plaintiff-appellant failed to allege that defendants-appellees conspired against her because she was a woman).

I conclude that the Cousins have failed to state a claim under section 1985.

**(3)      *Section 1986 "Failure to Prevent" Claim***

The failure of the section 1985 claim dooms the section 1986 neglect-to-prevent-a-conspiracy claim.  <u>Hahn v. Sargent</u>, 523 F.2d 461, 469–70 (1st Cir. 1975) (plaintiff's claim under section 1986 "falls upon the rejection of his [Section] 1985 claims"); <u>see also</u> <u>Rua v. Glodis</u>, 2012 WL 2244817, at *5 (D. Mass. June 14, 2012) (dismissing section 1986 claims where complaint failed to allege any wrongful act under section 1985).

**(4)      *Americans with Disabilities Act***

The proposed amended complaint asserts a claim under the Americans with Disabilities Act ("ADA").  The Cousins state that Robert Cousin is a disabled veteran.  Section 12132[17] prohibits denying a person with a disability "*by reason of such disability*" the services of a public entity (like a fire department).  42 U.S.C. § 12132 (emphasis added).  However, the amended complaint does not assert that it was Robert Cousins' disability that motivated the defendants' conduct with respect to the fire.  This claim cannot survive.

**(5)      *RICO***

In the opening of their proposed amended complaint, the plaintiffs make reference to "RICO."  Proposed Compl. at 1.  But they do not develop the claim or otherwise refer to it.  To the extent that the Cousins actually intend to assert claims under the Racketeer Influenced and Corrupt Organizations ("RICO") Act, 18 U.S.C. § 1962, I dismiss those claims.  None of the Cousins' submissions

---

[17] In asserting their claim under the ADA, the Cousins seek relief under "42 U.S.C. 12101," Proposed Compl. ¶¶ 170–78, which merely outlines the findings and purposes of the statute. Section 12132 prohibits denying a person with a disability, by reason of such disability, "the benefits of the services, programs, or activities of a public entity."  42 U.S.C. § 12132.

pleads a pattern of racketeering activity, nor do I read the allegations or exhibits to support even a remote possibility of liability under RICO.

### STATE LAW CLAIMS

The remaining claims[18] that the Cousins bring in their proposed amended complaint are state law claims, over which this Court may exercise supplemental jurisdiction if they are so related that the state claims form part of the same case or controversy.   28 U.S.C. § 1367.   If, as here, the court dismisses the "foundational federal claims, it must reassess its jurisdiction," and "the balance of competing factors ordinarily will weigh strongly in favor of declining jurisdiction over state law claims where the foundational federal claims have been dismissed at an early stage in the litigation." Camelio v. Am. Fed'n, 137 F.3d 666, 672 (1st Cir. 1998).  That is the case here: the foundational federal claims are being dismissed at a very early stage in the litigation, id., and the remaining state claims raise "substantial questions of state law that are best resolved in state court." Id.   I therefore decline to exercise supplemental jurisdiction over the remaining state law claims.   28 U.S.C. § 1367(c)(3); Desjardins v. Willard, 777 F.3d 43, 46 (1st Cir. 2015).

### CONCLUSION

The Cousins' description of small-town acrimony and their assertions that Tremont firefighters intentionally failed to protect the Cousins' home and

---

[18] The introduction to the Amended Complaint alleges "assumption of duty, breach of that duty, intentional infliction of emotional distress, negligent infliction of emotional distress, libel, slander, defamation, [and] negligent maintenance."  Proposed Compl. at 1.  The Cousins also complain of violations of Maine statutes.  Me. Rev. Stat. tit. 1, § 405(6)(A)(2) and Me. Rev. Stat. tit. 30-A, §§ 3153, 3154.  Proposed Compl. at 1.  However, the Counts articulated by the plaintiffs omit all state law claims but the intentional infliction of emotion distress claim.  Id. ¶¶ 145–78.

business on December 4, 2013, are, if true, shocking and scandalous,[19] for which there should be consequences.  But the consequences are not for this Court to determine, because neither the originally filed complaint nor the proposed amended complaint shows grounds for relief from a federal court under federal law.  As a result, the motion to dismiss the federal law claims with prejudice is **GRANTED** and the motion to amend the Complaint is **DENIED** as futile.  I decline to exercise supplemental jurisdiction over the state law claims, and those claims are **DISMISSED WITHOUT PREJUDICE** to any relief that the Cousins may seek in state court.

> **SO ORDERED.**

> **DATED THIS 15TH DAY OF JUNE, 2015**

/S/D. BROCK HORNBY
**D. BROCK HORNBY**
**UNITED STATES DISTRICT JUDGE**

---

[19] The Cousins allege that one volunteer firefighter resigned after the fire, unable to accept the treatment given to Cap'n Nemo's, Proposed Compl. ¶¶ 105, 138, and that she later was the object of retaliation.  Id. ¶ 101.  But the Cousins do not have standing to assert her claims.