UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| ROBERT L. COUSINS and | ) | |
| JUDY A. COUSINS, | ) | |
| | ) | |
| Plaintiffs | ) | |
| | ) | |
| v. | ) | 1:14-cv-00515-DBH |
| | ) | |
| TOWN OF TREMONT, et al., | ) | |
| | ) | |
| Defendants | ) | |

**AMENDED RECOMMENDED DECISION ON DEFENDANTS' MOTION TO DISMISS AND UPON REVIEW OF PLAINTIFFS' AMENDED COMPLAINT UNDER 28 U.S.C. § 1915** [1]

In this action, Plaintiffs Robert and Judy Cousins allege Defendants violated their civil rights in connection with a fire that destroyed their home and restaurant. The matter is before the Court on Defendants' partial motion to dismiss.[2] (Motion, ECF No. 40.) Through the motion, Defendants, citing Plaintiffs' failure to state an actionable claim and

---

[1] After the Recommended Decision was issued (ECF No. 49), Defendants moved to amend the Recommended Decision to clarify that the decision included a recommendation to dismiss Count III (a due process claim) of the proposed amended complaint. (ECF No. 50.) Consistent with the discussion regarding Count III in the Recommended Decision (Recommended Decision at 49), Defendants' motion to amend is granted. The Amended Recommended Decision, therefore, supplements the original Recommended Decision to include Count III among the counts identified in the Conclusion for which dismissal is recommended. In addition, Plaintiffs' objection to the Recommended Decision and Defendants' response to the objection reveal the parties agree that in the recitation of the facts, the Recommended Decision identified Defendant Keith Higgins as Defendant Heath Higgins in certain instances. The Amended Recommended Decision also addresses that issue.

[2] The Defendants who filed the motion are Defendants Keith Higgins, Heath Higgins, Tadd Jewett, Matthew Tetreault, and Matthew Lindsley.

the Court's previous order dismissing certain claims, seek the dismissal of some of the claims asserted in Plaintiffs' amended complaint. (ECF No. 36.)

After a review of the pleadings and the record, I recommend the Court grant in part and deny in part Defendants' motion.  In addition, because Plaintiffs are proceeding in forma pauperis and have asserted new claims against additional defendants, the amended complaint is subject to review in accordance with 28 U.S.C. § 1915(e).  Following the review, I recommend the Court dismiss several of the additional claims and defendants.

## I.    PROCEDURAL HISTORY

Plaintiffs commenced the action on December 3, 2014, with a thirteen-page complaint against twenty defendants, including five John Doe defendants.  (Complaint, ECF No. 1.)  The gravamen of the original complaint was Defendants' alleged failure of extinguish a fire on the property of Plaintiffs' home and business, the former Cap'n Nemo's Restaurant, in the Village of Bass Harbor, Tremont, Maine (the property).  Plaintiffs alleged Defendants exercised complete authority over efforts to combat the fire, yet intentionally permitted the building and adjacent property owned by Plaintiffs and their son to burn to a total loss.

On December 30, 2014, after a review pursuant to 28 U.S.C. § 1915(e)(2), the Court concluded Plaintiffs failed to assert an actionable claim against certain individuals, and dismissed the claims asserted against the individuals.  The dismissed individuals were Defendants Porier, LaPrade, Kelly, Weir, Tracy Patton, Wayne Patton, Sanborn, Thomas

Chisolm, Samuel Chisolm, Gilley, Jr. and five John Does.[3]   (Order Affirming the Recommended Decision of the Magistrate Judge, ECF No. 8.)   The Court, however, ordered service of the complaint on Defendants Keith Higgins, Heath Higgins, Tadd Jewett, Matthew Tetreault, and Matthew Lindsley.  Counsel entered an appearance, waived service of the complaint, and filed a motion to dismiss on behalf of all remaining defendants.  (ECF Nos. 11 – 14.)

Plaintiffs opposed the motion to dismiss and requested leave to file an amended complaint.  (ECF Nos. 15 – 17.)  Through their proposed amended complaint (ECF No. 16-1), Plaintiffs reasserted their core claims, attempted to cure certain deficiencies in their original complaint with respect to the dismissed individuals, and proposed to join some new defendants.

The Court denied Plaintiffs' motion for leave to amend, citing the futility of the proposed amendments, and granted Defendants' motion to dismiss.  (Decision and Order, ECF No. 23.)  In its assessment of the motion to dismiss and motion for leave to amend, the Court considered whether Plaintiffs had stated (1) a claim under the First Amendment; (2) a substantive due process claim; (3) an equal protection claim; (4) a § 1985 conspiracy claim; (5) a § 1986 "failure to prevent" claim; (6) a claim under the Americans with Disabilities Act; and (7) a claim under the Racketeer Influenced and Corrupt Organizations

---

[3] In effect, the Court denied Plaintiffs leave to proceed in forma pauperis to the extent they asserted their claims against the individuals, because Plaintiffs failed to allege sufficient facts to support an inference that the individuals had any liability for Plaintiffs' alleged loss.  The individuals were never served with the complaint, and thus never joined in the action as defendants.  The Court's ruling under 1915(e)(2) did not preclude Plaintiffs from an attempt to amend their complaint to state one or more claims against the individuals.

(RICO) Act.  The Court dismissed the federal claims with prejudice, denied as futile Plaintiffs' attempt to assert additional federal claims, and declined to exercise supplemental jurisdiction over any remaining state law claims.  The Court also denied Plaintiffs' subsequent motion to alter or amend its judgment.  (Order on Motion for Reconsideration, ECF No. 28.)

On appeal, the First Circuit "affirmed in part and vacated and remanded in part." (Judgment of United States Court of Appeals, ECF No. 33.)  The First Circuit upheld the dismissal with prejudice of Plaintiffs' First Amendment claims, but reversed the dismissal of Plaintiffs' substantive due process and equal protection claims.  The First Circuit did not address the Court's futility assessment of Plaintiffs' attempt to allege ADA and RICO claims and, consequently, the Court's assessment was undisturbed.

Following remand, at the Court's direction, Plaintiffs filed a further amended complaint (ECF No. 36), which is now the operative pleading in the case.  In the amended complaint, however, Plaintiffs did not simply assert the claims within the scope of the First Circuit's decision.  Instead, Plaintiffs significantly expanded the action to include sixteen counts, including some counts against new defendants.

Through their motion to dismiss, Defendants object to Plaintiffs' attempt to reassert previously dismissed claims other than Plaintiffs' substantive due process, equal protection, and state law claims.  Defendants also argue that as to certain new claims, Plaintiffs have failed to assert claims upon which they are entitled to relief.

## II.   BACKGROUND FACTS

In the amended complaint, Plaintiffs allege a variety of facts regarding events that transpired over several years.  The essence of Plaintiffs' allegations are summarized below.

Plaintiffs allege that when they purchased the property in 2005, Defendant Patton was the Tremont Volunteer Fire Department Assistant Chief.  (Am. Compl., ECF No. 36, ¶ 27.)  Defendant Patton was also a member of the Tremont Planning Board.  When Plaintiffs' permits (presumably related to the use of or construction on the property) were presented to the Planning Board, Defendant Patton recused himself, but was "spitting mad."  (*Id.* ¶ 28.)  According to Plaintiffs, when Defendant Patton subsequently became Chief of the Fire Department, he prohibited his personnel from patronizing Plaintiffs' restaurant.  (*Id.* ¶ 29.)  Defendant Patton's daughter and her domestic partner had worked for the prior owners.  (*Id.*)  Plaintiffs contend Defendant Samuel Chisolm, the Chief of the Southwest Harbor Fire Department, also instructed his personnel not to patronize Plaintiffs' business.  (*Id.* ¶ 30.)

In 2007, the Town of Tremont placed Plaintiffs' business on the agenda of several town meetings to address alleged violations of their amusement permit.  Defendant Patton, who would eventually be replaced as fire chief by Defendant Keith Higgins, lodged several complaints regarding parking violations on the property.  At one meeting, Defendant Patton stated he did not know if Plaintiff Judy Cousins was "Mrs. Cousins, or whatever," which statement Plaintiffs allege defamed Plaintiff Judy Cousins' character.  (*Id.* ¶ 40.)  Defendant Heath Higgins also made false statements regarding Plaintiffs' hours of operation.  (*Id.* ¶ 41.)

5

Plaintiffs assert the *MD Islander* and Defendant Good "wrote up the defamatory meetings and spread unfounded allegations[,] … intentionally disparaging [Plaintiffs'] reputation with no fact checking." (*Id.* ¶ 37.)  Defendant Brecklin is the editor of the *MD Islander*. (*Id.*)

While Plaintiffs were away and unavailable, Defendant Heath Higgins, also a selectperson, called an executive session of the board of selectpersons, evidently to discuss unidentified accusations made by an unidentified complainant, which accusations were published in the *MD Islander*. (*Id.* ¶¶ 43 – 44.)  By a vote of 4 – 1, the Board determined that Plaintiffs' business had not violated its entertainment license. (*Id.* ¶ 45.)

In 2008 and 2009, Plaintiffs were involved in a dispute with the Town regarding the width of the Flat Iron Road, which abuts Plaintiffs' property. (*Id.* ¶ 51.)  The matter eventually was resolved favorably to Plaintiffs. (*Id.* ¶ 52.)  Plaintiffs allege that with respect to the selectperson meetings regarding the issue, the *MD Islander* "printed disparaging false light," and that the "disparaging statements were intended to induce others not to deal with" Plaintiffs. (*Id.* ¶¶ 53, 54.)

Plaintiffs assert they heard rumors that should their premises ever catch fire, the fire department would let it burn (*id.* ¶ 55), and that the Tremont Volunteer Fire Department "bragged around town that they would not extinguish a fire at [Plaintiffs' property] as witnesses have and will verify." (*Id.* ¶ 89.)

According to Plaintiffs, Defendant Keith Higgins informed the Board of Selectpersons that Plaintiffs' had "uncorrected life safety violations" even though they "had corrected 6 of 7." (*Id.* ¶ 57.)  He also inaccurately stated that Plaintiffs had borrowed

a fire suppression system in order to pass a fire marshal inspection, and returned it after the inspection.  (*Id.* ¶ 59.)  In April and March of 2011, Defendant Keith Higgins stated at meetings of the Board of Selectpersons that the Fire Marshall would shut down Plaintiffs' business (*id.* ¶¶ 61 – 65), when in fact, the Fire Marshal increased the authorized maximum occupancy from 23 to 35.  (*Id.* ¶ 66.)

On June 4, 2012, Defendant Keith Higgins alleged parking violations on the property related to a trailer holding lobster traps (*id.* ¶ 67), but the Sheriff concluded there was no violation. (*Id.* ¶ 69.)  Plaintiffs allege that Defendant Keith Higgins' allegation was invalid and that the allegation and Defendant Good's "recharacterization" of the allegations "resulted in acts of violence against Plaintiffs such as the slashing of tires, smashing in two windshields, and shooting out of other miscellaneous windows with a pellet gun," and "were a major contributing factor that led to the fire that consumed most everything [they] owned."  (*Id.* ¶ 68.)

When Plaintiffs applied for a special amusement permit and liquor license in 2012, the Town of Tremont granted the request, evidently despite Defendant Keith Higgins' opposition.  (*Id.* ¶¶ 71 – 72.)  The Fire Marshal wrote that Plaintiffs "didn't have a long list of deficiencies as was stated by the MDI reporter."  (*Id.* ¶ 73.)

Defendant Heath Higgins reported to a state health inspector that Plaintiffs kept meat in unsanitary conditions.  The inspector conducted a surprise inspection and Plaintiffs passed.  (*Id.* ¶¶ 74 – 75.)  Defendant Heath Higgins also told the public that Plaintiffs were "bad" and that the public should not go to their establishment.  (*Id.* ¶ 77.)

On December 4, 2013, a fire started on Plaintiffs' property.  When the Tremont Fire Department responded, Plaintiff Robert Cousins informed Defendant Captain Heath Higgins that the fire was only the size of a campfire and he simply needed one more fire extinguisher to put it out.  Defendant Heath Higgins instructed Plaintiff to leave, and then proceeded to let the structure burn.  (Am. Compl. ¶¶ 78 – 86.)  Plaintiffs maintain that Defendant Chief Keith Higgins' assertion that the fire was too dangerous to fight was "overstated on purpose, and it was reported as such in the media."  (*Id.* ¶ 87.)  Witnesses on the scene, including at least one firefighter, expressed anger and frustration at the failure to fight the fire.  (*Id.* ¶¶ 97, 109.)  Plaintiffs also allege Defendant Keith Higgins supplied false information to the Southwest Harbor Volunteer Fire Department and to certain mutual aid fire companies to prevent them from putting the fire out.  (*Id.* ¶¶ 93 – 99.)  Plaintiffs maintain that Defendant Samuel Chisolm, by his conduct on the scene, "was also demonstrably predisposed to allow [Plaintiffs' property] to burn."  (*Id.* ¶ 113.)

Plaintiffs allege that an unidentified junior firemen stole a computer from the vehicle of Plaintiffs' son, and that Defendants allowed a fishing boat on the property to burn and chopped holes in it to prevent salvage.  (*Id.* ¶¶ 116 – 117.)  Defendants Tetreault and Lindsley, also firemen, removed a business sign from Plaintiffs' property and the sign has not been returned.  (*Id.* ¶¶ 122, 128.)

In the months following the fire, Defendant Sanborn "repeatedly sprayed gravel by 'peeling out' at Plaintiffs [sic] son-in-law."  (*Id.* ¶ 139.)  Plaintiffs assert Defendant Sanborn and Defendant Thomas Chisolm also taunted Plaintiff Robert Cousins' 93-year-

old mother by shouting expletives and revving their engines in front of her home.  (*Id.* ¶ 140.)

After the fire, Defendant Sanborn gave a thumbs up gesture to Plaintiffs' daughter while driving a fire truck back to the station.  (*Id.* ¶ 149.)  Defendant Lindsley opposed efforts to fund reconstruction after the fire.  (*Id.* ¶ 148.)  Defendant Keith Higgins changed his Facebook profile picture to a picture of the business engulfed in flames.  (*Id.* ¶ 150.)

Plaintiffs further allege that Defendant Nickerson, the local code enforcement officer, unjustifiably found violations of setback requirements that have impeded Plaintiffs' effort to rebuild.  (*Id.* ¶¶ 152 – 158.)  Defendant Nickerson and Defendant Reed, the Town Manager, issued a stop work order arbitrarily and irrationally.  (*Id.* ¶¶ 159, 164.)  The Town of Tremont denied Plaintiffs' request for a hearing on the matter.  (*Id.* ¶ 166.)

Plaintiff Robert Cousins is a 100% disabled veteran.  According to Plaintiffs, Defendant Good inaccurately reported in the *MD Islander* that Plaintiff Robert Cousins had not proved his disabled status.  (*Id.* ¶ 141.)

## III.   DISCUSSION

### A.    Standard of Review

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a party may seek dismissal of "a claim for relief in any pleading" if that party believes that the pleading fails "to state a claim upon which relief can be granted."   In its assessment of the motion, a court must "assume the truth of all well-plead facts and give the plaintiff[] the benefit of all reasonable inferences therefrom."  *Blanco v. Bath Iron Works Corp.*, 802 F. Supp. 2d 215, 221 (D. Me. 2011) (quoting *Genzyme Corp. v. Fed. Ins. Co.,* 622 F.3d 62, 68 (1st Cir. 2010)).  To

overcome the motion, the plaintiff must establish that his allegations raise a plausible basis for a fact finder to conclude that the defendant is legally responsible for the claim(s) at issue. *Id.*

To the extent in their amended complaint, Plaintiffs seek to assert claims against individuals or entities who are not presently defendants, because Plaintiffs are proceeding in forma pauperis, Plaintiffs' amended complaint is subject to screening in advance of service in accordance with title 28 U.S.C. § 1915. When a party is proceeding in forma pauperis, "the court shall dismiss the case at any time if the court determines," inter alia, that the action is "frivolous or malicious" or "fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2)(B). "Dismissals [under 28 U.S.C. § 1915] are often made *sua sponte* prior to the issuance of process, so as to spare prospective defendants the inconvenience and expense of answering such complaints." *Neitzke v. Williams*, 490 U.S. 319, 324 (1989). In order to state a claim against the additional proposed defendants, Plaintiffs must establish that their allegations raise a plausible basis for a fact finder to conclude that the particular defendant is legally responsible for the claim at issue. *Blanco*, 802 F. Supp. 2d at 221.

Although a *pro se* plaintiff's complaint is subject to "less stringent standards than formal pleadings drafted by lawyers," *Haines v. Kerner*, 404 U.S. 519, 520 (1972), the complaint may not consist entirely of "conclusory allegations that merely parrot the relevant legal standard," *Young v. Wells Fargo, N.A.*, 717 F.3d 224, 231 (1st Cir. 2013). *See also Ferranti v. Moran*, 618 F.2d 888, 890 (1st Cir. 1980) (explaining that the liberal

standard applied to the pleadings of *pro se* plaintiffs "is not to say that *pro se* plaintiffs are not required to plead basic facts sufficient to state a claim").

## B.     Defendants' Motion to Dismiss[4]

Defendants argue Plaintiffs have failed to state a claim against them for retaliation (count I), retaliation – procedural due process (count III), freedom of speech (count V), conspiracy to interfere with civil rights (count VI), action for neglect to prevent (count VII), violation of the Americans with Disabilities Act (count IX), terroristic arson (count X), a violation of freedom of access under Maine law (count XIII), arson under Maine law (count XIV), a claim under the Maine Tort Claims Act (count XV), and defamation (count XVI).   Defendants also assert Plaintiffs have failed to assert sufficient facts to warrant joinder of additional defendants.

### 1.     Count I – Retaliation

Plaintiffs allege they have been targeted and subjected to "the episode of governmental overbite" perhaps because of the Ron Paul sign on their property, their complaints about water quality in the Town, their use of a disabled veteran license plate, or Plaintiff Robert Cousins' disability determination. (Am. Compl. ¶ 169.)  Plaintiffs point to a recent stop work order issued by the Town for their property as evidence of another incident of retaliation.  In support of their claim, Plaintiffs cite 5 M.R.S. § 4633, the Maine Human Rights Act's general prohibition against retaliation and coercion.

Section 4633 of the MHRA provides, in relevant part:

---

[4] In this discussion, I will refer to the movants as the Defendants.

**1. Retaliation.** A person may not discriminate against any individual because that individual has opposed any act or practice that is unlawful under this Act or because that individual made a charge, testified, assisted or participated in any manner in an investigation, proceeding or hearing under this Act.

**2. Interference, coercion or intimidation.** It is unlawful for a person to coerce, intimidate, threaten or interfere with any individual in the exercise or enjoyment of the rights granted or protected by this Act or because that individual has exercised or enjoyed, or has aided or encouraged another individual in the exercise or enjoyment of, those rights.

**…**

5 M.R.S. § 4633.

The MHRA is designed to protect interests of individuals in fair employment, fair housing, public accommodations, and educational opportunity, against discrimination on the basis of race, color, sex, sexual orientation, physical or mental disability, religion, ancestry or national origin, age, and familial status. 5 M.R.S. § 4552. The essence of Plaintiffs' claim against Defendants is that they failed to suppress the fire on Plaintiffs' property due to an animus, perhaps discriminatory, toward Plaintiffs. Regardless of whether Defendants acted with discriminatory intent, Plaintiffs have failed to allege any facts that would support a finding that Defendants' alleged conduct was the result of Plaintiffs' opposition to an act or practice prohibited by the Maine Human Rights Act, or that Plaintiffs assisted or participated in any manner in a matter arising under the Act. In addition, Plaintiffs have failed to allege Defendants interfered with, coerced or intimidated Plaintiffs in retaliation for exercising or enjoying a right protected by the Act. Plaintiffs, therefore, have failed to assert an actionable claim against Defendants.

### 2.    Count III – Due Process Retaliation

Plaintiffs allege that "Defendants" have arbitrarily prevented Plaintiffs from rebuilding, including by issuing a stop work order and denying Plaintiffs the "Due Process of a speedy resolution." (Am. Compl. ¶ 183.)

To the extent Plaintiffs seek to assert a claim against Defendants, Plaintiffs' claim fails. Plaintiffs have not alleged any facts to suggest that Defendants are involved in the permitting process.[5]

### 3.    Count V – Retaliation – free speech

Plaintiffs attempt to assert a claim of retaliation based on their free speech activity. According to Plaintiffs, the Town attempted to take some of their property by designating the Flat Iron Road as a two-rod road rather than a three-rod road. Plaintiffs allege the attempt to take their property was in retaliation for their speaking out about water quality issues, for posting a Ron Paul sign on their property, and selecting license plates with a disabled veteran designation. (Am. Compl. ¶¶ 194 – 197.)

Plaintiffs have not asserted any facts to suggest Defendants were involved in the road dispute. Instead, Plaintiffs' claim appears to be directed to the alleged conduct of the new defendants. Plaintiffs' claim against Defendants thus fails.

### 4.    Count VI, VII and IX -- § 1985, § 1986, ADA

Plaintiffs allege Defendants conspired to deprive Plaintiffs of equal protection, citing 42 U.S.C. § 1985 (Count VI) and §1986 (Count VII). Plaintiffs also allege

---

[5] Plaintiffs' allegations appear to be directed to some of the defendants, including the code enforcement officer, whom Plaintiffs have joined as defendants. I will address the substance of the claim below as part of the review in accordance with 28 U.S.C. § 1915.

discrimination based on Plaintiff Robert Cousins' disability status (Count IX).  Defendants argue that the claims were dismissed by the Court with prejudice, were not addressed on appeal, and therefore cannot be reasserted despite the remand from the First Circuit. (Motion at 6.)

Plaintiffs did not assert the claims in their original complaint.  Instead, Plaintiffs first asserted the claims in an amended complaint (ECF No. 16) filed in response to Defendants' first motion to dismiss.  The Court addressed the claims in its earlier order of dismissal and concluded that Plaintiffs had not alleged sufficient facts to generate a plausible inference of class-based discriminatory animus other than economic or commercial animus.  (Decision and Order at 12 – 14.)  The Court, therefore, dismissed the claims with prejudice, and the First Circuit did not disturb that portion of the Court's decision.  Plaintiffs, therefore, cannot reassert the claim.

Even if Plaintiffs were not barred procedurally from asserting the claim, Plaintiffs have again failed to allege any facts that would support a finding that they are members of a protected class.  Plaintiffs' recently-filed complaint consists of mere conclusory allegations regarding protected class bias.

### 5.    Counts X and XIV – Arson

In Count X, Plaintiffs allege "terroristic arson" and cite 17-A M.R.S. § 804.   In Count XIV, Plaintiffs allege arson and cite 17-A M.R.S. § 802(1).  Plaintiffs do not have standing to prosecute criminal charges against others.  *United States v. Nixon,* 418 U.S. 683, 693 (1974) ("the Executive Branch has exclusive authority and absolute discretion to decide whether to prosecute a case"); *Linda R.S. v. Richard D.,* 410 U.S. 614, 619 (1973)

14

(private citizens lack a judicially cognizable interest in the criminal prosecution of another); *Cok v. Cosentino*, 876 F.2d 1, 2 (1st Cir. 1989); *Briand v. Lavigne*, 223 F. Supp. 2d 241, 251 (D. Me. 2002).  Plaintiffs' arson-related proposed criminal counts are thus futile and dismissal is appropriate.

### 6.    Count XIII – Maine Freedom of Access Act

Citing Maine's Freedom of Access Act (FOAA), Plaintiffs assert that Defendant Heath Higgins, a selectperson, violated the open session requirement of Maine law by holding an executive session "with an accuser" without allowing Plaintiffs to be present and without providing notice to Plaintiffs that accusations against them would be discussed by the selectpersons.  Plaintiffs also assert that when the Board voted on the subject matter of the session, the Board voted 4 – 1 in favor of Plaintiffs.

Plaintiffs evidently seek to challenge the executive session.  Because no adverse action occurred during the session, to the extent Plaintiffs seek an appeal in accordance with state law, Plaintiffs' claim fails.  1 M.R.S. § 409(2) (authorizing appeal to declare action taken null and void); *Cook v. Lisbon Sch. Comm.*, 682 A.2d 672, 678 (Me. 1996) (relief under § 409 is limited to the illegal approval of official actions in executive session).

FOAA § 410, however, provides an additional potential remedy for an alleged violation.  Section 410 states: "For every willful violation of this subchapter, the state government agency or local government entity whose officer or employee committed the violation shall be liable for a civil violation for which a forfeiture of not more than $500 may be adjudged."  Plaintiffs have asserted a claim for a forfeiture under section 410

against the Town.   Whether the Court should exercise supplemental jurisdiction over Plaintiffs' state law FOAA claim is addressed below.

### 7.   Count XV – Maine Tort Claims Act

In Count XV, Plaintiffs cite 14 M.R.S. § 8111, the section of the Maine Tort Claims Act that governs personal immunity for government employees.  Plaintiffs, however, do not assert any facts in Count XV.  The Act does not create a substantive claim.  Count XV, therefore, does not assert a claim for relief.

### 8.   Count XVI -- Defamation

Plaintiffs assert a defamation claim.  Plaintiffs' claim is focused on the conduct of the *MD Islander*, Alan Baker, Earl Brecklin, and Mark Good, based on articles published in the *MD Islander*.  Plaintiffs, therefore, have not alleged any facts that would support a defamation claim against Defendants.

## C.   Screening Pursuant to 28 U.S.C. § 1915

When a party is proceeding *in forma pauperis*, "the court shall dismiss the case at any time if the court determines," *inter alia*, that the action is "frivolous or malicious," "fails to state a claim on which relief may be granted," or "seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B).  "Dismissals [under § 1915] are often made *sua sponte* prior to the issuance of process, so as to spare prospective defendants the inconvenience and expense of answering such complaints." *Neitzke v. Williams*, 490 U.S. 319, 324 (1989).  The assessment of Plaintiffs' amended complaint in this context is governed by the standard that governs a court's review of a motion to dismiss, which standard was set forth above.

16

### 1.      Previously Screened Defendants

After a review of Plaintiffs' original complaint, in accordance with 28 U.S.C. § 1915(e)(2)(B), the Court dismissed Plaintiffs' claims against Defendants Porier, LaPrade, Kelly, Weir, Tracy Patton, Wayne Patton, Colton Sanborn, Thomas Chisolm, Samuel Chisholm, Gilley, Jr. and five John Does.  (Order Affirming the Recommended Decision of the Magistrate Judge, ECF No. 8.)  Plaintiffs' amended complaint reintroduces Wayne Patton, Colton Sanborn, Thomas Chisolm, and Samuel Chisolm as defendants.

#### a.      Wayne Patton

 Plaintiffs' allegations regarding Wayne Patton (a former fire chief and selectperson) involve conduct that predated the fire by a number of years, and do not suggest that at the time of the fire, Mr. Patton was involved in the alleged conduct of the Board of Selectpersons or the fire department.  In addition, although Plaintiffs did not assert a separate count for defamation against Mr. Patton, Plaintiffs alleged that during a meeting of the selectpersons, Mr. Patton stated "I don't know if she [Plaintiff Judith Cousins] is Mrs. Cousins, or whatever," which statement Plaintiffs allege was in "defamation of [Plaintiff Judith Cousins'] good character." (Am. Compl. ¶ 40.)  Simply stated, the statement is not an actionable factual statement.  Plaintiffs, therefore, have not asserted any facts that would support a plausible cause of action against Mr. Patton.

#### b.      Colton Sanborn

Plaintiffs allege Colton Sanborn was a participant in the fire response and that he approved of the handling of the fire.  Plaintiffs have asserted a plausible claim against Mr. Sanborn.

### c.      Samuel Chisolm

Plaintiffs allege Samuel Chisolm was at the time of the fire the chief of the Southwest Harbor Volunteer Fire Department, that he was on the scene of the fire with equipment to fight the fire, and that his conduct demonstrated a predisposition to let Plaintiffs' premises burn.  Plaintiffs also allege that Samuel Chisolm expressed personal animus toward them by prohibiting members of his force from patronizing Plaintiffs' business.  As alleged, Plaintiffs have asserted an actionable claim against Samuel Chisolm in connection with the response to the fire.

### d.      Thomas Chisolm

Plaintiffs allege that after the fire, Thomas Chisolm taunted Plaintiff Robert Cousins' 93-year-old mother by shouting expletives and revving an engine in front of her home.  Plaintiffs' allegations do not support an actionable claim against Thomas Chisolm.

## 2.      Newly-identified Defendants

Plaintiffs' amended complaint joins as defendants *MD Islander*, Alan Baker, Earl Brecklin, and Mark Good, on a claim of defamation, and code enforcement officer Debbi Nickerson and town manager Dana Reed, on claims related to Plaintiffs' effort to rebuild after the fire.

### a.      Media defendants

Plaintiffs assert claims against the *MD Islander*, Alan Baker, Earl Brecklin, and Mark Good (collectively, "the media defendants"), based on articles published in the *MD Islander*.  Plaintiffs allege state law tort claims of defamation and intentional infliction of emotional distress.  (Counts VIII and XVI.)

Federal district courts are courts of limited jurisdiction.  In order for this Court to have jurisdiction over a claim between Plaintiffs and the media defendants, the parties must either be residents of different states or their dispute must involve a federal claim.  *Cousins v. Higgins*, No. 1:14-CV-515-DBH, 2015 WL 3755272, at *2 (D. Me. June 15, 2015), *reconsideration denied,* 2015 WL 5040142 (Aug. 26, 2015); 28 U.S.C. §§ 1331, 1332.

Ordinarily, this Court would not have jurisdiction over a state tort action between Plaintiffs and the media defendants, and Plaintiffs would be required to assert their claims in state court.  Because Plaintiffs have asserted a federal claim against some of the defendants, the issue is whether the Court should exercise its supplemental jurisdiction over the state law claims.

Title 28 U.S.C. § 1367, which governs the Court's exercise of its supplemental jurisdiction, provides:

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

Although at least some of Plaintiffs' claims against the media defendants are related to the subject matter of Plaintiffs' federal claims, the defamation claims involve significant factual and legal issues that have no relevance to the federal claims.  While Plaintiffs' claims against the state actor defendants involve the defendants' actions prior to and during the fire, the focus of the defamation claims will be the circumstances of the media

defendants' publications, including the information known to the media defendants at the time, the accuracy of the publications, and the motivation of the media defendants. The defamation claims are separate claims based on separate legal principles and will require the presentation of materially different evidence than the federal claims. Accordingly, the exercise of supplemental jurisdiction over the state law claims is not warranted. *See*, *e.g.*, *Wisey's # 1 LLC v. Nimellis Pizzeria LLC*, 952 F. Supp. 2d 184, 193 (D.D.C. 2013) (declining supplemental jurisdiction over, inter alia, state law defamation claim); *Raja v. Massachusetts*, No. 1:11-CV-11601, 2013 WL 4499247, at *3 (D. Mass. Aug. 16, 2013) (declining supplemental jurisdiction in the context of § 1915 screening order); *Nouri v. TCF Bank*, No. 2:10-CV-12436, 2011 WL 836764, at *10 (E.D. Mich. Mar. 9, 2011) (declining supplemental jurisdiction over, inter alia, defamation claim).

### b. *Debbi Nickerson and Dana Reed*

Plaintiffs allege that Debbi Nickerson, the Town's code enforcement officer, and Dana Reed, the Town Manager, issued a stop work order based on a finding that Plaintiffs violated a setback requirement during reconstruction. Plaintiffs maintain the issuance of the stop work order was arbitrary, and motivated by retaliatory animus. Plaintiffs also complain that the municipal planning board will not grant them a hearing. (Amended Complaint ¶ 167.)

The First Circuit has cautioned that a federal court "should not … sit as a zoning board of appeals." *Creative Environments, Inc. v. Estabrook,* 680 F.2d 822, 833 (1st Cir. 1982) (quoting *Village of Belle Terre v. Boraas,* 416 U.S. 1, 12 (1974) (Marshall, J., dissenting)). The Court reasoned that state administrative proceedings involving land use

or zoning ordinarily do not involve fundamentally unfair procedure or circumstances raising equal protection concerns. *Id.* at 832 n.9.

Plaintiffs' claim regarding the setback requirement is a straight forward zoning issue that should appropriately be decided in the state district court, the judicial venue where zoning-related appeals are customarily heard. Other than the fact that the loss from which Plaintiffs are attempting to rebuild was caused by the fire that is the subject of this action, Plaintiffs' zoning dispute with the Town is unrelated to the substantive claims asserted in this action. Plaintiffs have also failed to assert any facts that would generate a constitution-based claim. Finally, given the many claims asserted in this action against numerous defendants, joinder of the claim in this action will likely result in a delay in the resolution of the zoning dispute. Plaintiffs, therefore, have failed to assert a federal claim against Ms. Nickerson and Ms. Reed, and have not asserted any facts to support the Court's exercise of its supplemental jurisdiction over Plaintiffs' claim against Ms. Nickerson and Ms. Reed.

        *c.*    *Town of Tremont*

Plaintiffs assert certain claims against the Town of Tremont. As mentioned above, Plaintiffs have asserted a claim for a violation of Maine's FOAA. The claim, however, is limited in scope, and is unrelated to Plaintiffs' substantive claims arising out of the fire. The matter is a state law claim that is appropriately addressed in state court, and is not a matter over which the Court should exercise its supplemental jurisdiction.

Plaintiffs also allege a claim against the Town related to the fire and the response of the Town's employees to the fire. Municipalities are not automatically liable for constitutional injuries cause by municipal employees. *Freeman v. Town of Hudson*, 714

F.3d 29, 38 (1st Cir. 2013).  Municipalities are liable for a constitutional deprivation when the deprivation is the product of a municipal policy, including where the deprivation is the product of a "single decision by a municipal policymaker."  *Id.*  Presumably, Plaintiffs' claim against the Town is premised on the acts of Defendant Keith Higgins, the Town's fire chief.  Plaintiffs' allegations are sufficient to support the necessary inference that the Town's fire chief had final authority to determine whether efforts should be made to suppress the fire at Plaintiffs' property, and that he instituted a policy not to suppress the fire.  Plaintiffs, therefore, have asserted a claim against the Town.

> d.    *Count V*

Through Count V, Plaintiffs appear to assert a separate claim based on a dispute over a rod of roadway.  As alleged, Plaintiffs prevailed on this matter at the municipal level. (Amended Complaint ¶ 195.)  As such, Count V does not state a factual basis for relief in this Court.

## IV.    CONCLUSION

Based on the foregoing analysis, I recommend the Court:

1. Dismiss Count I (Maine Human Rights Act retaliation based on protected conduct);

2. Dismiss Count III (due process claim);

3. Dismiss Count V (the rod of roadway claim);

4. Dismiss Counts VI, VII, and IX (class-based discrimination claims);

5. Dismiss Counts X and XIV (arson);

6. Dismiss Count XIII (FOAA);

7.  Dismiss Count XV (Maine Tort Claims Act immunity provision);

8.  Dismiss Count XVI (defamation) and dismiss *MD Islander*, Alan Baker, Earl Brecklin, and Mark Good without service;[6]

9.  Dismiss Wayne Patton and Thomas Chisolm without service;

10. Dismiss Debbi Nickerson and Dana Reed without service; and

11. Order service of the amended complaint on the Town of Tremont, Colton Sanborn, and Samuel Chisolm.[7]

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof.  A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

---

[6] Under Maine law, a defamation claim is time-barred if it is not filed within two years of the alleged defamatory publication.  14 M.R.S.A. § 753; *Tanguay v. Asen,* 1998 ME 277, ¶ 7, 722 A.2d 49, 50. Plaintiffs filed this action on December 3, 2014, but first asserted their defamation claims against the newly named media defendants on April 10, 2015, in their original amended complaint.  (ECF No. 16-1.)  As set forth in the current amended complaint, the defamation claim is based both on publications that predated the fire by several years (Compl., ECF No. 36, ¶ 37 (2007 publication), ¶ 53 (2009 publication)), and a publication with an unspecified date (*id.* ¶ 141).  The former publications were arguably time barred before Plaintiffs filed suit.  Whether the latter was or is currently time barred is unclear.  However, the publication occurred sometime prior to the original amended complaint because it is mentioned in the amended pleading.  (ECF No. 16-1, ¶ 70 (referencing but not attaching an exhibit that evidently was not filed).) Assuming the initial article was published sometime around the December 4, 2103, fire, Plaintiffs' ability to pursue the claim in state court could be compromised if they do not file the claim promptly in state court. 28 U.S.C. § 1367(d) ("The period of limitations for any claim asserted under subsection (a) [supplemental jurisdiction] … shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period.").

[7] If the Court accepts the recommendation, the remaining claims will be the claims in Counts II (equal protection), IV (substantive due process), VIII (emotional distress), XI (negligent breach of 30-A M.R.S. § 3153), and XII (negligent breach of 30-A M.R.S. § 3154).  The remaining defendants will be the Town of Tremont, Samuel Chisolm, Keith Higgins, Heath Higgins, Tadd Jewett, Matthew Lindsley, Colton Sanborn, and Matthew Tetreault.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.[8]


/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 10th day of March, 2017.

---

[8] Plaintiffs have already filed an objection to the recommended decision. (ECF No. 51.)  In the objection, Plaintiffs challenge the determination that Plaintiffs have not asserted an actionable due process claim. (Objection at 3 – 8.)  Plaintiffs' objection, therefore, is deemed to be an objection to the Amended Recommended Decision, and Plaintiffs are not required to file an additional objection to preserve their challenge to the Amended Recommended Decision generally or the recommended dismissal of Count III.